Thank you. Good afternoon. May it please the court, my name is Corrie Hong and I represent petitioner Ciriaco Valencia. There are three reasons as to why the habeas petition should be granted. The first is that the jury instruction was erroneous. It misstated the law regarding the elements necessary to establish the offenses of attempted sodomy and attempted rape and permitted the jury to wrongly find guilt if Mr. Valencia formed an intent when the victim was alive but acted when he believed her to be dead. Second, this error is not harmless under California state law. The court of appeal made an unreasonable determination of facts when it found that there was overwhelming evidence to establish that the victim was sexually assaulted when alive. In fact, the prosecution expert never gave an opinion as to when the injuries consistent with sexual assault in fact occurred. By contrast, the defense expert gave an opinion and cited evidence that the injuries consistent with sexual assault occurred after the victim died. Analogous... Where in the sequence of events do you find, as far as the evidence goes, find the error? Because it seems to me, even assuming that the jury instruction on attempt was wrong because it omitted the possibility of her being dead at the time, you seem in your brief to keep focusing on penetration has to happen while she's alive. But that isn't the law, is it? No. That was not the intended emphasis of my brief. The crime is that there has to be an ineffectual, a direct but ineffectual act done towards the commission of rape and of sodomy. And there was evidence of bruising and a struggle before she died, correct? Well, that is what is contested. Yes, there was bruising while she was alive. Okay. So if there's bruising while she's alive, why couldn't the jury have found, even under a correct instruction, that the overt act towards the attempt occurred while she was alive while this bruising happened? Well, the bruising, this is on 38 through 46 of the record, was on the left arm, the hands, the legs. The bruising that was consistent with sexual assault, which was the buttocks and the thighs. But that's not ñ there's no requirement that an attempted sexual assault be directed only to the sexual parts. A person can attempt a sexual assault by holding somebody's arms or legs and attempting a sexual assault. So I'm not sure why it makes any difference that the bruising was not in the location that you're describing. Well, under Petsnick, it is relevant because the defense contested this element at trial. And the prosecution did not have evidence that there was actually sexual assault while the victim was alive. Well, the reason it's relevant, I think, is because we're not talking about sufficiency of the evidence, are we? I mean, we're talking about, you know, harmlessness of the error. And just because the jury could have found that she was alive, what is the evidence that they ñ that's what they probably did? Well, under the Harmless Errors Center in California, it simply is there ñ was it contested evidence and is there overwhelming evidence to the contrary? No. Is it the California standard that governs? Well, no. Well, EDPA, there has to be ñ BRICT, right? We looked at the BRICT standard. Correct. Correct. I guess the best argument I would have to that is that the prosecution testimony was that the death occurred within three to five minutes. And given that there was not ñ there wasn't evidence that the bruises with sexual assault occurred before the victim died, and then when the court then misstated what the relevant law is, it left open that possibility where the jury was misconstructed. Well, when did the intent ñ what does the evidence show and what are the instructions required with regard to intent to rape? The intent to rape? Yeah. Well, there ñ and that's where the instructions were properly stated, that both the intent and the act has to occur while the victim is alive. All right. So where in the sequence was ñ is your theory that somehow in all of this mayhem he was wreaking upon the victim, he formed the intent to rape and then waited until after she was dead to carry out the overt act? Well, that would be the defense ñ that would be the defense expert. Yeah, but where? When? What did he say? What did he say? Well, this would be Dr. Lawrence, and at page 67, 68, 67, he said that the injuries consistent with sodomy occurred post-mortem, ejaculation of closure. Yeah. Injury ñ what were the injuries associated with sodomy? That there was a tear in the ñ in the anus tissue. Okay. So that's penetration, isn't it? Correct. Right. So that's why I said your brief seems to be talking about the only thing that could have been an act has to be a physical manifestation of physical force on either the anus or the vagina. Well, or even, you know, the ñ I think the bruises with the ñ the bruising around the thighs would show that an attempt is occurring for ñ for a sexual assault. And when did that happen? That occurred after the victim died, according to the defense expert. The thigh bruises were not pre-mortem? No. And that was based on the level of blood that was found in the injuries. That's what the defense expert testified regarding when the bruises occurred either before or after the moment of death. So you're saying that it has to be an act that takes place in the genital area? For ñ for rape and sodomy, I would say that. I think the most ñ the confusing part is that the trial judge correctly stated the law with rape and sodomy and then misstated the law with attempted rape and attempted sodomy. As a result, I think it made the jury very confused as to whether or not these were different acts or whether it was a different standard or the same standard. And by leaving the inconsistent standards, it misled the jury into allowing that possibility to occur. Counsel, before you're done, I would like you to tell us what difference any of this makes to your client, because if the instructions were correct on rape and sodomy and there were numerous special circumstances found here, what possible benefit would it be to him even if you're correct? Under Petsnick, that's where the California Court of Appeal struck a defective special circumstance, even though there were two valid special circumstances. That would be the analogous case. So there wasn't a futility argument under California state law. I'm not asking as a matter of California state law. I'm asking you why ñ well, I guess your argument is that it was erroneous under California law, therefore you win. That's all you have to show? Well, Your Honor, in terms of also the detriment that it continues to my client is that under the California correctional system where he will be imprisoned for life without the possibility of parole, regardless of what happens today, he is currently designated to be a sex offender. Right. But even if you win on the attempts, what are the five special circumstances that were found? Kidnapping, burglary, robbery, sodomy, and rape. So my understanding is that the sodomy and rape would be stricken because of this faulty, defective error. See, that's what I'm trying to figure out, because you say it was correct as to rape and it was correct as to sodomy and it was incorrect only as to the attempts. So I'm not sure where that ñ where that leads us. Well, my understanding is that special circumstance encompasses both the rape and the attempted rape. And so if the special circumstance is defective, it should be stricken. And at that point, then the prosecution can either retry it or it would be stricken and he would be ñ receive the benefits of being housed without the designation of being a sex offender. Okay. If there are no further questions, may I reserve the rest of my time? You may. And we used a lot of it. You can use a little bit extra when the time comes. May it please the Court. Kathy Rivlin appearing for the Respondent. I wanted to go back to basics for one second here, because I have a concern. I believe the instructions that there's sort of one more instruction we haven't been considering that's here in the excerpt of record that we should be considering. And on excerpt of record page 29, this is Petitioner's excerpt of record, that first paragraph talks about mere preparation and the second sentence says, However, acts of a person who intends to commit a crime will constitute an attempt where those acts clearly indicate a certain unambiguous intent to commit that specific crime. The acts themselves show that the intent continues. And this is part of Penal Code Section 20, which is sort of very basic to the definition of crime in California, that to be a crime in California, there has to be a concurrence of act and intent. There's no claim in this case that the basic sua sponte, required instruction on a concurrence of act and intent wasn't given in this case. I acknowledge that I didn't create a Respondent's excerpt of record and so it's not before us today. But there's one other instruction on the concurrence of act and intent that has to be in this case, because it would be their first issue on appeal if it wasn't. And the other one is that the issue before us was whether there was a concurrence of act and intent. It's the timing, whether the act that constituted the attempt occurred while the intent to rape or to sodomize was still the intent of the penalty. Well, I thought it was whether it occurred while the victim was still alive. That defines whether it's an actual rape or whether it's an actual sodomy. So the question is, does he have an intent to rape, which means an intent to assault a live person, at the time he commits the act that constitutes the attempt? Well, let's assume that's the case. Well, not only that, but besides the intent, I mean, the act has to be, doesn't it, in connection with a live person? Yes. So. Then isn't that the question, whether the, you know, the instructions correctly inform the jury that for a conviction, the victim had to be alive when the act that carried out the attempt was committed? He had, the defendant had to believe that the. . . Well, believe or not, it still had to be alive. In order for it to be a rape, the victim actually has to be alive. In order to be an attempted rape, the defendant must actually believe the victim is still alive, whether that is factually correct or not. Well. Was there any. . . So the reason why. . . Is there evidence in this case, I mean, was that one of the basis on which the prosecution argued on the attempt that, well, whether the victim was alive or dead, the defendant believed she was alive? That's part of the instructional case, yes, absolutely. Well, let's assume for a minute that the instructions were erroneous. They're under the Brecht standard. Why would that error be harmless? There's several reasons why this error is harmless under Brecht. First, reviewing the instructions as a whole, we would argue that no reasonable juror could have found that this defendant did not commit a direct but ineffectual act towards a rape or sodomy without still believing that his victim was alive. And the basis for that is, and, in fact, it's even supported by the defense expert, were the injuries that Mrs. Leuenberger sustained to her legs, were those inflicted at a time that she was still alive? Answer, yes, all of those bruisings are ones where she had blood pressure. So by definition, she was alive at that time. If there is bruising, the victim is alive. You don't get – you can get tearing, but you cannot get bruising if the victim has died. So counsel, on her argument, argued that the thigh bruises were postmortem per the defense expert. Is she wrong? It's not consistent with the quote at RT 1640 at ER 46, which I just read, that experts' opinion is that if there's any blood pressure at all, you can get bruising. If there's no blood pressure, you cannot get bruising. So the leg and those were the thigh bruises? Yes. He was asked generally about the thighs and the ankles. But he said wherever there's color, basically, you've got a bruise that occurred while the victim was still alive. Now, you've – all of the bruising was clearly an attempt to pin down a struggling victim and commit a sexual assault. All of that bruising was created as one or multiple direct acts toward a rape or a sodomy. Whose expert was being questioned? I'm looking at this. Okay.  I'm reading it, but I don't know. 46 is direct examination. Is that the State's expert? Prosecution. Is it? Okay. I'm sorry. So is there a different statement by the other expert? I don't have one marked, I'm afraid. Okay. We do have it in the excerpts. And I know that in the supplemental excerpt of record or volume 2 of the excerpt of record, there was a question about whether this bruising was consistent with sexual assault while the victim was alive, or at least, where was the – where are you quoting for the leg bruises? What page were you on? I'm sorry. For the first quote that I read? Yeah. Is it excerpt of record 46? Oh, 46. Yeah, 46. And then as we noted in our brief, even Dr. Lawrence agreed that the bruising was not inconsistent with having been made at – while the victim was still alive. Was he asked the question whether you can bruise after death? I thought that was part of what was in the cross-examination. I thought that was essentially why he had to agree that this was consistent with acts taken on the victim while she was still alive. And just viewing this evidence, if you don't want your victim to scream, you put tape over their mouth. If you don't want to look at your victim while they're raping them, you cover her whole head. And that's what happened here. This is a situation that the facts themselves, from the injuries, from the manner of the use of the tape, from the defendant's flight afterwards, all of these are indicative of a guilty conscience. And in particular as to these instructions, the – to get to an error that is harmful here, you have to find that the jury relied on attempted rather than actual rape. And in particular, you have to find that the – even having understood the rape and sodomy instructions, which do make clear that to commit a rape, the victim must be alive, that the jury still, having properly found an intent to commit rape, still found that at some point, before having done anything, he became aware that – or believed that the victim had died and still proceeded. And that's just inconsistent with the evidence, the physical evidence. Thank you, counsel. Ms. Hung has some rebuttal time remaining. On the bruises, according to my note, on ER 40, there's a discussion where this is Dr. Stevens, the prosecution counsel, where he describes the bruises as a matter of degree. So depending – to determine whether it's alive or dead, it's not bruising  and whether there's heat or the coloration that determines. Well, I'm looking at 45. And it says there are visible bruises across the legs in both left and right side. The bruising is predominantly across the inside top and lateral portions of the legs. You see it on the left leg especially and to some extent across the inside and lower portions of the right side. Of all the injuries that were looked at microscopically, they are generally all similar in age, acute or fresh injuries. And so they're all similar age. Question, were the injuries that Mrs. Leuenberger sustained to her legs, were those inflicted at a time that she was still alive? Answer, yes. All of these bruisings are ones that she had blood pressure. So by definition, alive at that time. That seems pretty conclusive, doesn't it? Well, page 40, that's where he discussed the buttocks and that's where he says that the buttocks. But you said the legs and the buttocks. So what difference does it make? It's vaginal, the legs.  Did you hear what I just said? I just read the upper left and right. Your Honor, I think part of the confusion, too, is beginning at page 47, there's also a question of the thighs, the right interior thigh. I'm looking at 48 and the bruising on the right thigh. And there, the prosecution expert does not give any testimony regarding the timing of when that bruising occurred, which he later clarifies is consistent with direct evidence of sexual assault. So that is how I read the record, in particular 47 through 54. Well, he's referring to a photograph. So have you matched the photograph with ER 45 to 46 that I just was reading about? No, Your Honor. I can't recall that. It might help. So we'll have to look at that record, I guess. And so that's for the record. And then the expert evidence was, again, 67 and 68 regarding the postmortem injuries. That's what the defense provided. That's in the record. Where is that? What's the site? 67, 68. ER? The ER 67, ER 68. Yeah. Okay. That's what you're relying on. That's what the defense expert, correct. Okay. All right. Thank you. Okay. And are there any further questions? I don't believe so. Okay. Thank you, counsel. Thank you for your time. Thank you. Thank you. We appreciate the arguments of both counsel. And the case just argued is submitted, and we will be back at 345, differently configured.
judges: Tashima, Graber, Fisher